**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**JACQUELYN A. JONES,**

> **Plaintiff,**

**v.**                                                                 **Civil Action No. 3:19cv566**

**SUN PHARMACEUTICAL INDUSTRIES, INC.,**

> **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Sun Pharmaceutical Industries, Inc.'s ("Sun") Partial Motion to Dismiss (the "Partial Motion to Dismiss"). (ECF No. 7.) Plaintiff Jacquelyn A. Jones responded, (ECF No. 11), and Sun replied, (ECF No. 12). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant in part and deny in part the Partial Motion to Dismiss.

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges that Sun violated Jones's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*

## I. Factual and Procedural Background

### A.    Factual Background[2]

Starting in 2011, one of Sun's predecessors employed Jones.  (Compl. ¶ 6, ECF No. 1.)

"During the years 2012 through 2014 . . . Jones was the predecessor's top District Sales

Manager." (*Id.*)  Beginning in May 2017, Sun employed Jones as a District Sales Manager.  (*Id.*

¶ 5.)  In 2017, Jones "finished as [the] second-ranked sales manager for Sun." (*Id.* ¶ 6.)  In 2018,

Jones "was on pace to achieve that honor again." (*Id.*)

Jones avers that, while in her role at Sun, the Head of Commercial Operations, Mitchell

Freidberg, showed a "clear preference for male sales managers." (*Id.* ¶ 7.)  She says that

Freidberg "routinely failed to respond to . . . Jones'[s] emails although he responded to e[]mails

from male sales managers." (*Id.*)  Jones also alleges that during management meetings,

Freidberg "direct[ed] his comments and gaze only towards male managers." (*Id.* ¶ 8.)

Jones adds that "following a managers meeting in October 2017 . . . six other managers

approached . . . Jones and commented that it was obvious Freidberg 'hated' her." (*Id.*)  When

Jones shared her concerns with her direct supervisor, the National Sales Director, he "concurred

that Freidberg treated her differently than the male sales managers." (*Id.* ¶ 9.)

---

[2] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

Sun also brings this Partial Motion to Dismiss under Rule 12(b)(1).  Because Sun attacks Count II of the Complaint on its face, asserting that it fails to state a claim upon which subject matter jurisdiction can lie, the Court will assume the truth of the facts as alleged by Jones when considering this ground of the Partial Motion to Dismiss as well. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Beyond Freidberg's actions, Jones alleges that "senior executive management fostered a culture that disregarded the contributions of female sales representatives and managers." (*Id.* 1.) At the time of her dismissal, Jones claims she was the only woman sales manager on her six person leadership team. (*Id.* ¶ 15.) Further, Sun fired the only other female on the team and replaced her with a man. (*Id.*) Also, Jones states that "eight of last ten sales representatives to leave . . . Jones'[s] division did so because they realized Sun did not promote women to management positions." (*Id.* ¶ 14.)

In January 2018, Sun terminated Jones's employment. (*Id.* ¶¶ 10, 15.) Prior to the termination of her employment, Jones explains that while employed, "her duties required virtually constant travel." (*Id.* ¶ 10.) Therefore, she "was required to submit documentation of her travel expenses for periodic reimbursement." (*Id.*) "In January 2018, it was discovered that . . . Jones had mistakenly submitted the same expense receipt for reimbursement twice." (*Id.*) She asserts that "[h]aving already received the reimbursement . . . Jones volunteered to repay the sum as soon as the mistaken [sic] was brought to her attention." (*Id.*) However, on January 12, 2018, Sun terminated her employment. (*Id.* ¶¶ 10, 15.)

Jones contends that her dismissal "was unwarranted under the circumstances." (*Id.* ¶ 11.) In support, Jones states that in the summer of 2017, "a number of male sales representatives were discovered by Sun management to have been receiving excessive reimbursements for work cellphone use in amounts inconsistent [with] Sun policy." (*Id.* ¶ 12.) Jones alleges that Sun did not dismiss any of these male employees. (*Id.*)

Jones avers that her replacement "was a less[]qualified male" who had "less pharmaceutical sales management experience than she had, and only first-line management experience, not second-line experience, as she had." (*Id.* ¶ 13.) Jones claims that the National

3

Sales Director "intended to hire a woman to replace . . . Jones but was overruled by [the] Vice President of Sales." (*Id.* ¶ 14.)

On October 31, 2018, Jones filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 19.) Jones received a right to sue notice "from the EEOC dated May 22, 2019." (*Id.*)

### B.   **Procedural Background**

Jones brings this employment action against her former employer, Sun. (Compl. 1.) Jones pursues two counts in the Complaint, both asserting violations of Title VII, 42 U.S.C. § 2000e-2: (1) Gender Discrimination; and, (2) Hostile Work Environment. (*Id.* 5, 6.)

Sun filed the Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)[3] and 12(b)(6),[4] seeking dismissal of Count II.[5] In support of the Partial Motion to Dismiss, Sun contends that Jones's claim for a hostile work environment is time barred and lacks a sufficient basis to state a claim for relief. Jones responded, and Sun replied. The Court now turns to the merits of the pending motion.

---

[3] Rule 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. 12(b)(1).

[4] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[5] Sun does not challenge Count I of Jones's Complaint in the Partial Motion to Dismiss. On the same day Sun filed the Partial Motion to Dismiss, it also filed a Partial Answer responding to the remaining allegations in the Complaint. (ECF No. 9.)

## II. Applicable Standards of Review

### A. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of

the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of

the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to

factual allegations, however, and "a court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Iqbal*, 556 U.S. at 679.

### B.      Standard of Review: Rule 12(b)(1)

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the

Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting

jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n*, 914 F.

Supp. at 1338 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936);

*Adams*, 697 F.2d at 1219). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack

subject-matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint

on its face, asserting that the complaint fails to state a claim upon which subject-matter

jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697

F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See*

*Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject-matter

jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R.*

*Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F.

Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the

court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the

existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen*

*v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness

attaches to the plaintiff's allegations, and the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l*

*Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Here, the Partial Motion to Dismiss attacks Count II of Jones's Complaint on its face,

asserting that it fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l*

*Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams,* 697 F.2d at 1219. Therefore,

when considering the Partial Motion to Dismiss under Rule 12(b)(1) the Court will assume the

truth of the facts as alleged by Jones. *See id.*

### III.  Analysis

Sun challenges Jones's hostile work environment claim based on timeliness and

sufficiency of pleading. Although the continuing violation doctrine could render Jones's hostile

work environment claim timely, Jones fails to plead sufficient facts to support a continuing

hostile work environment claim. As a result, the Court will deny the Partial Motion to Dismiss

for untimeliness under Rule 12(b)(1), but will grant it as to failure to state a claim under Rule

12(b)(6). The Court will dismiss Count II, the hostile work environment claim.

**A.    The Continuing Violation Doctrine Renders Jones's Hostile Work Environment Claim Timely**

**1.    Legal Standard:  Timing for Title VII Employment Claims**

Title VII mandates that "in a case of an unlawful employment practice with respect to

which the person aggrieved has initially instituted proceedings with a State or local agency . . .

such charge shall be filed by or on behalf of the person aggrieved within three hundred days after

the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "Virginia is a

deferral state, so a prospective plaintiff has 300 days from the last act of discrimination to file a

charge with the EEOC." *Vasquez v. Potomac Hosp., Inc.*, No. 1:10cv216, 2010 WL 3984685, at *5 (E.D. Va. Oct. 8, 2010).

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court of the United States discussed the difference between hostile work environment claims and discrimination claims based on discrete acts. 536 U.S. 101, 110 (2002). The Supreme Court stated that "[b]ecause each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the . . . 300[]day period after the act occurred." *Morgan*, 536 U.S. at 102. In accordance with *Morgan*, a court can only consider allegations of a discrete act if the plaintiff files a charge within 300 days after the act occurred. *See id.*

However, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "'unlawful employment practice.'" *Id.* at 115. The continuing violation doctrine—which applies only to hostile work environment claims—provides that "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. As a result, "for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."[6] *Id.* at 118.

"In other words, even if most of the harassing conduct on which a plaintiff relies to establish [his or] her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period." *Guessous v. Fairview Prop. Invs, LLC*, 828 F.3d 208, 222 (4th Cir. 2016).

---

[6] The Court will refer to the act that took place within the 300 day period as an anchor for the purposes of the continuing violation doctrine. *See Morgan*, 536 U.S. at 118 (stating that "[i]n order for the [hostile work environment] charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment").

8

**2.      Because the Continuing Violation Doctrine Applies, Jones Timely Brought Her Hostile Work Environment Claim**

For Jones to have timely brought her hostile work environment claim, at least one act contributing to the hostile work environment must have taken place within the 300 days preceding the filing of her EEOC claim, and that act must be part of the same unlawful employment practice as those which occurred outside the statutory period. *See Morgan*, 536 U.S. at 122. Because Jones's termination took place within the 300 day time frame and relates to the same unlawful employment practice, under the continuing violation doctrine Jones timely brought her hostile work environment claim. *See id.* The Court will address each conclusion in turn.

First, Jones's termination of employment occurred within the applicable 300 day time frame. On October 31, 2018, Jones filed her charge with the EEOC. (Compl. ¶ 19). Sun's January 12, 2018 termination of Jones's employment is the last discriminatory act alleged in Jones's Complaint. (*Id.* ¶¶ 10, 15.) Because this termination took place 292 days before Jones filed her charge with the EEOC, it falls within the statutory time period. *See Morgan*, 536 U.S. at 118.

Second, the Court must determine whether Jones's termination can serve as the anchor for her hostile work environment claim under the continuing violation doctrine. Historically courts have held that distinct unlawful discriminatory practices cannot be combined with other unlawful discriminatory practices to bring "a practice that occurs outside of the statutory window under a court's jurisdiction." *See Shaw v. Aramark Mgmt. Servs. Ltd.*, 903 F.Supp 413, 418 (E.D. Va. 2012). Under this standard, Jones could not combine her termination with other occurrences outside the 300 day window to make her hostile work environment claim timely. *See id.*

9

However, the United States Court of Appeals for the Fourth Circuit in *Guessous* recently examined the issue of "whether non[]time[]barred discrete acts can be considered part of the series of separate acts that collectively create a hostile work environment, thus rendering a hostile[]environment claim timely under the continuing[]violation doctrine." 828 F.3d at 223 (internal quotation marks and citations omitted). The Fourth Circuit explained that the Supreme Court recently used a constructive discharge as part of a hostile work environment claim. *See id.* As a result, the *Guessous* court concluded that "so long as the [discrete] act is part of the pattern of discriminatory treatment against the employee, then that act should be sufficient for the purposes of the continuing[]violation doctrine, even if the act would otherwise qualify as a discrete act that is independently actionable." *Id.* Therefore, the Fourth Circuit concluded that the plaintiff's termination could suffice as a timely action and the continuing violation doctrine applied.[7] *Id.*

---

[7] In *Shaw*, the Fourth Circuit stated that

> distinct unlawful discriminatory practices [such as, "termination, failure to promote, denial of transfer, or refusal to hire"] each start their own statutory clock, and that, while the creation of a hostile work environment constitutes a single unlawful discriminatory practice, it cannot be combined with other distinct unlawful discriminatory practices . . . for the purposes of bringing a practice that occurs outside of the statutory window under a court's jurisdiction.

903 F. Supp. 2d at 418 (citing *Morgan*, 536 U.S. at 122). Because Shaw had not alleged any discriminatory act that occurred within the 300 day window, the *Shaw* court thus concluded that the plaintiff's hostile work environment claim was time barred. *Id.* at 418–19. The *Shaw* court reached this conclusion even though the plaintiff's termination of employment occurred within the specified time period. *Id.* at 419.

The Fourth Circuit did not expressly overrule the 2012 *Shaw* decision in its 2016 *Guessous* opinion. In *Guessous*, the Fourth Circuit concluded that the plaintiff's hostile work environment claim was timely where the plaintiff's termination from employment occurred within the applicable time period and she alleged that her termination from employment constituted a part of the hostile work environment she faced. 828 F.3d at 223. The *Guessous* court explained that the plaintiff did not seek to make a discrete act timely using the continuing violation doctrine, but rather sought to use a non time barred discrete act to apply the continuing violation doctrine to other discriminatory actions that took place outside of the applicable time

Under the *Guessous* standard, a non time barred discrete act—such as a termination of employment—can be considered an anchor for a pattern of discriminatory treatment under the continuing violation doctrine. *See id.* Here, Jones's termination is not a time barred act because it occurred within the 300 days that proceeded her filing of her EEOC claim. (*See* Compl. ¶¶ 15, 19.) Although Sun alleges that "the last date any hostile conduct allegedly occurred is October 2017," (Mem. Supp. Partial Mot. Dismiss 4, ECF No. 8), the *Guessous* court concluded that "even if most of the harassing conduct on which a plaintiff relies to establish [his or] her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period," *Guessous*, 828 F.3d at 222. Jones alleges that her termination was a part of the hostile work environment she faced because Sun took this action against her under the same circumstances that Sun had declined to terminate male sales representatives. (*See id.* ¶ 12.) As a result, the termination is a part of the pattern of discriminatory treatment Jones faced while employed at Sun. *Guessous*, 828 F.3d at 223 (concluding that a discrete employment action can be used as the anchor for the continuing violation doctrine if it constitutes a part of the pattern of discriminatory treatment the plaintiff faced). Therefore, under these circumstances, Jones's termination serves as the anchor under the continuing violation doctrine. *See id.*

Because Jones brought her hostile work environment claim within 300 days of the termination of her employment, which serves as the anchor for the continuing violation doctrine, Jones timely brought her hostile work environment claim. Jones can use all of the allegations in her Complaint, even those that occurred outside of the 300 day time period to support her hostile work environment claim. The Court will deny the Partial Motion to Dismiss on this ground

---

period. *Id.* at 222–23. Therefore, the *Guessous* court concluded that the plaintiff's hostile work environment was timely. *Id.* at 223.

under Rule 12(b)(1).  It now turns to whether Jones has pleaded sufficient facts to support this hostile work environment claim.

> **B.      Jones Fails to Plead Sufficient Facts to Support Her Hostile Work Environment Claim**
>
> **1.      Legal Standard:  Hostile Work Environment Claims**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or sex."  42 U.S.C. § 2000e-2(a)(1).  To bring a Title VII hostile work environment claim, Jones must allege sufficient facts to plausibly show that the harassment she suffered was "(1) unwelcome; (2) based on [his [or her] protected characteristic, such as race, national origin, or religion]; (3) sufficiently severe or pervasive to alter the conditions of [his [or her]] employment and create an abusive atmosphere; and (4) imputable to [the defendant]." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) (citing *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)) (granting motion to dismiss); *see also E.E.O.C. v. Sunbelt Rentals*, 521 F.3d 306, 313 (4th Cir. 2008) (discussing the elements of a Title VII hostile work environment claim when addressing the district court's grant of employer's motion for summary judgment).

The third element of a Title VII hostile work environment claim requires that the actions contributing to the hostile work environment be "sufficiently severe or pervasive to alter the conditions of [his [or her]] employment and create an abusive atmosphere." *Mustafa*, 313 F. Supp. 3d at 695; *see also Sunbelt Rentals, Inc.*, 521 F.3d at 313.  "The severe or pervasive element has both a subjective and objective component." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 203 (4th Cir. 2019) (citing *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)) (addressing an appeal from the district court's grant of the employer's motion for

summary judgment on plaintiff's Title VII hostile work environment claim based on race discrimination). As a result, Jones must allege sufficient facts to show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.* (internal citations omitted).

To show that Sun's discriminatory behavior was objectively severe and pervasive at the motion to dismiss stage, Jones must allege sufficient facts plausibly demonstrating that the workplace was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mustafa*, 313 F.3d at 695 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).

When considering whether a plaintiff has alleged sufficient facts to state a Title VII hostile work environment claim, the Court will "consider 'the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work.'" *Id.* (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011)). The "Fourth Circuit has made clear that 'Title VII does not create a general civility code in the workplace' and 'complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable." *Id.* (internal quotation marks, citations, and footnote omitted).

**2.      Because Jones Fails to Plead Sufficient Facts to Plausibly Establish the Third Element of a Title VII Hostile Work Environment Claim, Jones Fails to Show that Sun Created a Hostile Work Environment**

Here, Jones fails to plead sufficient facts to show the third element of a hostile work environment claim: that the discrimination she faced was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive atmosphere." *Mustafa*, 313 F. Supp. 3d at 695. Therefore, the Court will dismiss this claim.

In *Perkins*, a recent racial discrimination case, the Fourth Circuit concluded that the facts alleged by Perkins did not rise "to the level of severity and pervasiveness required by the Supreme Court and Fourth Circuit precedent to constitute a hostile workplace." 936 F.3d at 209. In that case, the plaintiff alleged that African Americans and women made up most of the employees at the bottom of his department's ranking technicians, that the company unfairly assigned undesirable shifts to African Americans, and that the plaintiff never saw white employees questioned about overtime as he, an African American employee, was queried. *Id.* Perkins also asserted that "some white employees did not talk to and otherwise shunned African American employees" and that "white employees were promoted more often than African American employees." *Id.*

Although the *Perkins* court considered the case on appeal from the district court's ruling on a motion for summary judgment, Jones's facts closely resemble those in *Perkins* and *Perkins* provides helpful guidance in deciding the instant Partial Motion to Dismiss. Specifically, *Perkins* illustrates that the discriminatory treatment Jones experienced at Sun does not rise to the level of "severe and pervasive" harassment required to make out her claim. *See Mustafa*, 313 F. Supp. 3d at 695.

14

Here, Jones articulates four allegations in support of her hostile work environment claim: (1) Freidberg "was . . . noticeably rude to . . . Jones during management meetings, directing his comments and gaze only towards male[] managers;" (2) on one occasion Jones's coworkers noticed Freidberg's actions during a meeting and commented that Freidberg "hated" Jones; (3) Freidberg "routinely failed to respond to . . . Jones'[s] e[]mails although he responded to e[]mails from male sales managers;" and, (4) Sun terminated her employment for a mistake that male employees had also made, but did not terminate the employment of any male employees (Compl. ¶¶ 7–8, 12; *see* Resp. Mot. Dismiss 5–6.) Jones also alleges that Sun generally failed to promote women. (*See id.* ¶ 14.)

Many of Jones's allegations mirror the allegations in *Perkins*. For instance, similar to the lack of promotion based on race in *Perkins,* Jones asserts a lack of promotion based on gender, stating that "[e]ight of last ten sales representatives to leave . . . [her] division did so because they realized Sun did not promote women to management positions." (*Id.* ¶ 14.) As to the billing mistake that that led to her termination, Jones contends that as a female employee Sun treated her differently than male employees who made the same billing mistake. (*Id.* ¶ 12.) This allegation echoes the allegation in *Perkins* that the company did not question white employees in the same way that it questioned the plaintiff about his overtime hours. *See Perkins,* 936 F.3d at 209. Jones also contends that Freidberg did not communicate with her electronically and he did not look at her during meetings. (*Id.* ¶¶ 7–8.) Jones's allegation again echoes Perkin's claim that white employees refused to speak with and otherwise shunned African American employees. *Perkins,* 936 F.3d at 209. Given the similarity to the facts of *Perkins*, even assuming the truth of the factual allegations in Jones's Complaint and making all reasonable inferences in favor of

15

Jones, the Court concludes that Jones has failed to allege sufficient facts to establish a hostile work environment claim.

Even aside from the similarity to the facts of *Perkins*, considering the "totality of the circumstances," Jones has failed to plead sufficient plausible factual allegations to state a Title VII hostile work environment claim. *See Mustafa*, 313 F. Supp. 3d at 695. For instance, as to Jones's allegation that Freidberg was "noticeably rude" to her, (Compl. ¶ 8), to the point that her colleagues commented that Freidberg "hated" her, (*id.*), these contentions depict "nothing more than . . . callous behavior by [one's] superior[]," which does not suffice to state a Tile VII hostile work environment claim, even at the motion to dismiss stage, *id.* (citation omitted). Also, Jones never even suggests that the harassment she experienced was "physically threatening" or that it "unreasonably interfere[d] with" Jones's work performance. *Id.* Rather, Jones states that she "finished as [the] second-ranked sales manager for Sun in 2017, and was on pace to achieve that honor again for fiscal year 2018." (Compl. ¶ 6.) Therefore, the Court cannot reasonably infer that the harassment "unreasonably interfere[d] with" Jones's work performance. *Mustafa*, 313 F. Supp. 3d at 695.

"Title VII does not create a general civility code in the workplace." *Id.* (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010)). Even presuming the well-pleaded factual allegations to be true, Freidberg's actions do not rise to the level of "severe and pervasive" harassment that altered the conditions of Jones's employment. *Id.* Therefore, Jones fails to plead sufficient facts to plausibly establish the required third element of a Title VII hostile work environment claim. *Id.*

16

Because Jones's allegations do not meet the third element of a hostile work environment claim,[8] the Court will grant the Partial Motion to Dismiss on this ground. The Court will dismiss Count II: the hostile work environment claim.[9]

### IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Partial Motion to Dismiss. (ECF No. 7.) Specifically, the Court will deny the Partial Motion to Dismiss for untimeliness brought under Rule 12(b)(1), but will grant the Partial Motion to Dismiss for the failure to state a claim under Rule 12(b)(6). The Court will dismiss Count II: Jones's hostile work environment claim.

Because Sun has already filed a Partial Answer to the remaining claim, the Court will order the Parties to appear for an initial pretrial conference on June 25, 2020, at 11:30 a.m.

It is SO ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Date: 5/14/2020
Richmond, Virginia

---

[8] Because Jones does not plead sufficient facts to plausibly establish the third element of her hostile work environment claim, the Court need not consider whether she has alleged sufficient facts to plausibly establish the other three elements of that claim.

[9] In response to the Partial Motion to Dismiss, Jones alleges that "[t]he pervasiveness [of the discriminatory actions] can establish legally-actionable hostility even when the hostility is less severe." (Resp. Partial Mot. Dismiss 6, ECF No. 11.) However, even considering all of the allegations of discrimination contained in Jones's Complaint, Jones does not plausibly raise an inference that her workplace at Sun was "permeated with discriminatory intimidation, ridicule, and insult." *Morgan,* 536 U.S. at 116.